## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-01816-COA

**DENISE PRATT**                                                               **APPELLANT**

v.

**NANETTE NELSON**                                                               **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/05/2013 |
| TRIAL JUDGE: | HON. MITCHELL M. LUNDY JR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL LEE DULANEY |
| ATTORNEY FOR APPELLEE: | SHANNON WILLIAMS COLEMAN |
| NATURE OF THE CASE: | CIVIL - OTHER |
| TRIAL COURT DISPOSITION: | MISSISSIPPI RULE OF CIVIL PROCEDURE 65 INJUNCTION AND TEMPORARY RESTRAINING ORDER ISSUED AGAINST APPELLANT PRATT RESTRAINING HER FROM CONTACTING APPELLEE NELSON, SYLVIA MOFFATT, AND ISABELLE NELSON; AND DISMISSING PETITION FOR RESTRAINING ORDER AGAINST APPELLEE NELSON BY APPELLANT PRATT AND LARRY JOE PRATT JR. |
| DISPOSITION: | REVERSED AND RENDERED - 07/21/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., BARNES AND FAIR, JJ.**

**BARNES, J., FOR THE COURT:**

¶1.     Denise Pratt appeals the final order of the Desoto County Chancery Court, which found sufficient evidence to issue a Mississippi Rule of Civil Procedure 65 injunction and restraining order against her.  Pratt was restrained from contacting Nanette Nelson (her sister), Sylvia Moffatt (her seventy-year-old mother), and Isabella Nelson (her niece and

Nelson's four-year-old daughter), or coming within 1,000 feet of them. If Pratt violated the order, the court would impose a penalty of $10,000 against her. Further, both Pratt and Nelson were denied attorney's fees. Finally, a complaint for a restraining order under Rule 65(b) by Pratt and her husband, Larry Joe Pratt Jr. (Joe), against Nelson and other family members was dismissed. Nelson admits that the trial court erred in issuing a Rule 65 injunction but contends that a domestic violence protection order under the Domestic Abuse Protection Act (Act) should have been issued instead. *See* Miss. Code Ann. §§ 93-21-1 through 93-21-33 (Rev. 2013). She contends that the trial court's "order should be reversed and rendered granting Appellee a Domestic Violence Protection Order and awarding attorney's fees."

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2.     This case stems from ongoing disagreement between family members that reached a crisis point in the fall of 2011.[1] Nelson lives in Southaven, Mississippi, with her daughter, Isabelle, and her mother, Sylvia. On November 2, 2011, over a period of several hours, Pratt engaged in what Nelson described as malicious, threatening, and harassing phone calls to her,

---

[1] Pratt, a pharmacist, owns several pharmacies and various businesses in the North Mississippi and Memphis areas. Pratt claimed this specific contention started in April 2011, which "marked a division in the family." Pratt stated that her mother, Sylvia, had requested Pratt pay $50,000 in legal fees for her brother Christopher Moffett, who had legal troubles. Pratt refused; so Sylvia sold a Cadillac that Pratt had given Sylvia. The proceeds went to her son's legal fees. Pratt claimed she has given her mother and Nelson approximately $50,000 over the past three to five years for various expenses, but the practice ended after this episode, leaving them disgruntled.

including approximately seventy-eight text messages, thirty-eight telephone calls, and numerous voicemail messages to Nelson's home telephone, Nelson's cellular telephone, and Sylvia's cellular telephone.[2]

¶3. Pratt continued her telephone tirade until the early morning hours; Nelson stated Pratt used profanity and threatened they "would burn alive."[3] Pratt also admitted to watching their home that evening, and indeed was observed driving past their home several times. Frightened, Nelson called the DeSoto County Sheriff's Office and the Southaven Police. Officer Kirk Thompson with the DeSoto County Sheriff's Department responded to the call and advised Nelson to file appropriate charges and seek an emergency protection order.

¶4. Accordingly, the following morning, Nelson obtained an ex parte emergency domestic abuse protection order against Pratt until November 14 for herself, Isabelle, and Sylvia in the Southaven Municipal Court. On the same day, Nelson also filed charges for telephone harassment in the DeSoto County Justice Court. Finally, Nelson filed a petition for a

---

[2] Pratt claimed her calls were in response to an incident Nelson instigated. In July 2011, Pratt fired her brother, Markcus Moffatt, from one of her businesses. Nelson and Sylvia have also worked for Pratt. In late October 2011, Pratt was served with litigation initiated by Markcus and Nelson concerning Markcus's termination by Pratt. Pratt also claimed Markcus, Nelson, and Sylvia have called various insurance agencies and pharmacy boards alleging improper conduct within her pharmacies in order to "ruin" her. Markcus has admitted he has called the Tennessee Board of Pharmacy about Pratt. Pratt claims her calls on November 2 were in response to Nelson's informing Pratt that she was going to "pay" for firing Markcus, and Nelson, Sylvia, and that Markcus would "financially ruin" Pratt.

[3] Nelson became very upset when her daughter Isabelle was awakened by the phone calls, became frightened, and fell while running to her mother for comfort. A trip to the emergency room for stitches ensued.

domestic abuse protection order under the Act in DeSoto County Chancery Court, which is the subject of the instant case. In it, Nelson claimed a pattern of emotional abuse by Pratt every three months, for the past two years.

¶5. On November 8, 2011, Pratt and her husband, Joe, filed a complaint for a restraining order under Rule 65(b) in the Chancery Court of DeSoto County against Nelson, Sylvia, and brothers Markcus and Christopher Moffatt. Nelson claims the filing was in retaliation for her domestic abuse protection order; Pratt claims she had no knowledge of Nelson's order. In her complaint, Pratt explained that because she had recently terminated Markcus from his employment at Pratt's pharmacy business, he had "exhibited various harassing and threatening behaviors," including "threats of physical and mental harm," as had Sylvia, Christopher, and Nelson. However, the complaint did not offer details on the threatening behavior.

¶6. On November 9, 2011, Nelson obtained from municipal court an extension to the temporary domestic abuse protection order until December 5, but was advised the order could not be extended again. Therefore, Nelson filed a petition in chancery court for the same type of order, which expired December 20. Nelson attempted service of the notice of the domestic abuse protection order on Pratt approximately seven times. Again, Pratt claims she had no notice or service of process of this order. Accordingly, on February 10, 2012, Pratt filed a motion to set aside Nelson's order of protection due to insufficient service of process,

4

which was denied.[4] In February 2012, Nelson filed a motion for contempt of court against Pratt in chancery court claiming Pratt was violating the protective order after some encounters at the sheriff's office and justice court for proceedings related to this case.

¶7.     On February 23, 2012, Pratt filed stalking charges against Nelson in justice court. Nelson's scheduled hearing in the DeSoto County Justice Court against Pratt for telephone harassment was also on this date. The warrant was served on Nelson in justice court, but the judge released Nelson on her own recognizance and continued the hearing until April 2012. At the hearing in justice court, an agreed order was entered granting a temporary mutual restraining order, with the trial continued until June 2012, when the parties agreed to dismiss all charges in justice court. Additionally, Nelson claims they agreed to enter an order in chancery court granting a permanent restraining order against Pratt, while Pratt claims they agreed to dismiss all charges in chancery court.

¶8.     On June 20, 2012, all of the parties signed an agreed order in chancery court to extend the protection order an additional six months. In December 2012, the agreed order was extended another sixty days, and then another six months, as the trial was continued. In May 2013, Nelson filed motions to compel discovery responses and to dismiss Pratt's complaint for a restraining order, as well as a request for attorney's fees.

¶9.     On August 1, 2013, trial began, but due to time constraints it had to be continued. On

---

[4] Testimony showed Pratt's sister, Pandora Whatley, was served at Pratt's residence on November 17, 2011, and the officer instructed Whatley to give the papers to Pratt, who was sitting nearby in the kitchen in plain view of the interaction.

August 15, 2013, the chancery court entered an interim restraining order and injunction against Pratt nunc pro tunc to August 1, 2013, prohibiting Pratt from coming within 1,000 feet of the concerned parties. On August 26, 2013, the trial resumed. The witnesses revealed numerous family arguments and controversies over several years.

¶10. On September 5, 2013, the chancellor issued a final order, finding sufficient evidence to support a Rule 65 injunction against Pratt, restraining her from contacting Nelson, Sylvia, and Isabella, or coming within 100 feet of them. Additionally, Pratt's complaint was dismissed, and Nelson's request for attorney's fees was denied. Nelson filed a motion to reconsider the final order or, in the alternative, a motion for a new trial, desiring 1,000 feet of distance and to charge all costs of the proceeding against Pratt. The chancery court denied Nelson's motion, and Pratt timely appealed the final order. She raises three issues: (1) there was insufficient service of process for Nelson's domestic abuse protection order; (2) there was no proper basis to enter the domestic abuse protection order; and (3) the chancellor erroneously entered a Rule 65(b) restraining order or injunction. Nelson agrees that the trial court erred in issuing a Rule 65(b) restraining order or injunction, but argues the chancellor should have granted the domestic violence protective order under the Act. Additionally, Nelson finds error with the chancellor's denial of attorney's fees. Since we find the chancellor erred in entering relief under Rule 65(b), which Nelson has confessed, and the

6

supreme court has ruled her cross-appeal untimely,[5] we will not discuss the remaining issues, as they are moot.

## STANDARD OF REVIEW

¶11.     This Court will not disturb the findings of the chancellor unless the chancellor was manifestly wrong or clearly erroneous, or applied the wrong legal standard. *McNeil v. Hester*, 753 So. 2d 1057, 1063 (¶21) (Miss. 2000) (citations omitted). The standard of review for the chancellor's decision is abuse of discretion. "[F]or questions of law, the standard of review is de novo." *Id.*

## ANALYSIS

¶12.     Both Pratt and Nelson argue that the chancellor erroneously entered a Rule 65(b) restraining order or injunction. We agree. The chancellor's decision was clearly erroneous, as he applied the wrong legal standard. Accordingly, the chancery court's decision must be reversed and rendered.

¶13.     On August 1, 2013, trial commenced; however, it had to be continued after the plaintiff's case-in-chief due to time constraints. An interim order was issued on this date, and entered nunc pro tunc on August 14, 2013. The chancellor found sufficient evidence to support a restraining order and injunction against Pratt (which appeared temporary in nature, but the chancellor did not cite to Rule 65) prohibiting her from coming within 1,000 feet of

---

[5] Nelson subsequently requested permission from the supreme court to file an out-of-time cross-appeal, but this request was denied.

7

Nelson, her husband, Sylvia, or Isabella, "or any other person who is named, testified, or concerned in this matter."

¶14.    On August 26, 2013, the trial resumed.  After hearing all of the testimony, the chancellor issued a "Rule 65 injunction" against Pratt in his final order, restraining her from contacting Nelson, Sylvia, or Isabella, and prohibiting Pratt from coming within 100 feet of the parties.[6]  There was no time limit placed on the injunction in the order.

¶15.    Rule 65 relates to injunctive relief.  Rule 65(b) allows for a "temporary restraining order" to

> be granted without notice to the adverse party or his attorney if . . . it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition.

The comment to Rule 65(b) applicable in 2013 states:

> Rule 65(b) provides for injunctive relief without notice to the adverse party. This relief, known as a *temporary* restraining order, can be accorded without notice provided that the verified facts of the complaint clearly justify plaintiff's apprehension about the threat of irreparable injury.  Once entered, a temporary restraining order expires by its terms.  During the time it is in effect, extensions for good cause are permissible. . . .  Upon application having been

---

[6] On August 26, the chancellor stated from the bench, "people are entitled to be left alone. . . . I'm going to keep the restraining order that I set in place at the close of the plaintiff's case.  But I am going to up [the penalty] to $10,000 upon a . . . valid showing of violation of the restraining order that I entered against you, Mrs. Pratt. . . .  I think that's reasonable. . . . I see a pattern of how this has taken place. . . . It's [been an] ongoing controversy . . . for quite some time."  When Pratt's counsel asked if the order was granted under the Domestic Abuse Protection Act or under Rule 65, the chancellor responded that he was granting it under the "Chancery Court Rules, . . . a temporary restraining order [under Rule] 65(b), whether it is asked for or not, because that would be general relief."

8

made for a temporary restraining order, the court must immediately set a hearing on the companion motion for a preliminary injunction [under Rule 65(a)].

Rule 65(d) describes the form and scope of the injunction or restraining order. Both must

> describe in reasonable detail . . . the act or acts sought to be restrained; it is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concern or participation with them who received actual notice of the order by personal service or otherwise.

M.R.C.P. 65(d)(1)-(2). The comment to Rule 65(d) states the rule "is designed to protect those who are enjoined by informing them specifically of what they are required to do or refrain from doing . . . ."

¶16. Pratt argues that Nelson only requested relief under the Act, not under Rule 65. *See* Miss. Code Ann. §§ 93-21-1 through 93-21-33. Nelson agrees that she did not request relief under Rule 65, claiming she only requested a "Domestic Violence Order of Protection," and filed pleadings under the Act on forms created by the Attorney General's Office. Both Nelson and Pratt also agree that since relief was not originally requested under Rule 65, the requirements of Rule 65(d)(2) have not been met regarding Nelson's petition for a domestic violence protection order filed on November 2011. Nor did Nelson file a complaint or affidavit requesting relief under Rule 65.

¶17. It appears the chancellor was continuing the temporary restraining order put in place at the beginning of the trial on August 1 permanently under Rule 65, instead of granting protection under the requested relief of the Act. However, Rule 65 is not the proper vehicle

9

for imposing a permanent restraining order; it is designed to afford temporary relief when irreparable harm occurs. As Nelson notes, there is no precedent for converting a domestic violence protection order into a Rule 65 injunction; neither the statute nor the rule contemplates this action. Under this case's procedural posture, Nelson was either entitled to relief under the Act or not.

¶18.   We therefore find the chancellor's ruling in error regarding the Rule 65 injunction/restraining order. All other issues are moot, as Nelson did not file a timely cross-appeal. Accordingly, the chancellor's final order must be reversed and rendered.

¶19.   **THE JUDGMENT OF THE CHANCERY COURT OF DESOTO COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR. WILSON, J., NOT PARTICIPATING.**