# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00561-COA

**SHELBY WAITE**                                                                                            **APPELLANT**

**v.**

**JUSTIN ADKISSON**                                                                                          **APPELLEE**

DATE OF JUDGMENT:                    03/27/2018
TRIAL JUDGE:                                HON. CYNTHIA L. BREWER
COURT FROM WHICH APPEALED:    MADISON COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:        DEREK L. HALL
                                                    MEGAN ELIZABETH TIMBS
ATTORNEY FOR APPELLEE:            CYNTHIA HEWES SPEETJENS
NATURE OF THE CASE:                  CIVIL - DOMESTIC RELATIONS
DISPOSITION:                              REVERSED AND REMANDED - 08/13/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

## BEFORE J. WILSON, P.J., WESTBROOKS AND McDONALD, JJ.

## J. WILSON, P.J., FOR THE COURT:

¶1.     Shelby Waite filed a petition for a domestic abuse protection order under the Protection from Domestic Abuse Law (PDAL), Miss. Code Ann. § 93-21-1 *et seq.* (Rev. 2013), in the Madison County Chancery Court.  The chancery court did not make a finding that Waite was or was not entitled to relief under the PDAL.  Instead, the court granted a "permanent restraining order" under Rule 65 of the Mississippi Rules of Civil Procedure. Waite argues that the chancery court should have granted a protection order under the PDAL, and she asks this Court to reverse and render a judgment to that effect.

¶2.     We hold that the chancery court erred by granting a permanent restraining order

without any finding that Waite was entitled to relief under the PDAL.  In the absence of a finding of abuse under the PDAL, there was no basis for the court to grant permanent injunctive relief.  However, we cannot render judgment in favor of Waite because the chancery court, as the finder of fact, must determine whether she is entitled to relief under the PDAL.  Therefore, we reverse and remand for a new hearing consistent with this opinion and for the chancery court to grant or deny Waite's petition for a protection order under the PDAL.

## THE PROTECTION FROM DOMESTIC ABUSE LAW

¶3.     Under the PDAL, "[a]ny person may seek a domestic abuse protection order for himself by filing a petition alleging abuse by the respondent." Miss. Code Ann. § 93-21-7(1) (Rev. 2013).  In addition, any parent may seek a domestic abuse protection order on behalf of a minor child.  *Id.*  A petition may be filed in a municipal, justice, county, or chancery court in the municipality or county where the abuse occurred or where the petitioner resides. Miss. Code Ann. § 93-21-5(1)-(2) (Rev. 2013).  The petition should allege, inter alia, "[t]he facts and circumstances concerning the alleged abuse."  Miss. Code Ann. § 93-21-9(1)(b) (Rev. 2013).  The PDAL defines "Abuse" to include

> the occurrence of one or more of the following acts between spouses, former spouses, persons living as spouses or who formerly lived as spouses, persons having a child or children in common, other individuals related by consanguinity or affinity who reside together or who formerly resided together or between individuals who have a current or former dating relationship:
>
> (i) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury or serious bodily injury with or without a deadly weapon;
>
> (ii) Placing, by physical menace or threat, another in fear of imminent serious

2

bodily injury;

(iii) Criminal sexual conduct committed against a minor within the meaning of Section 97-5-23;

(iv) Stalking within the meaning of Section 97-3-107;

(v) Cyberstalking within the meaning of Section 97-45-15; or

(vi) Sexual offenses within the meaning of Section 97-3-65 or 97-3-95.

"Abuse" does not include any act of self-defense.

Miss. Code Ann. § 93-21-3(a) (Rev. 2013).

¶4. The PDAL permits the court to "issue an emergency domestic abuse protection order without prior notice to the respondent upon good cause shown by the petitioner." Miss. Code Ann. § 93-21-13(1)(a) (Rev. 2013). Good cause includes the "[i]mmediate and present danger of abuse to the petitioner" or to "any minor children." *Id.* If an emergency domestic abuse protection order is entered, the respondent must be personally served with notice of entry of the order. *Id.* An emergency order is effective for ten days or until a hearing may be held, whichever occurs first. *Id.* § 93-21-13(1)(c). If the hearing is continued, the court may extend the emergency order for up to twenty days, "as it deems necessary for the protection of the abused person." *Id.*

¶5. Before a temporary or final domestic abuse protection order may be entered, the respondent is entitled to notice of a hearing and an opportunity to be heard. Miss. Code Ann. § 93-21-15(1)(a), (2)(a) (Supp. 2017). After a hearing, if the chancery or county court "find[s] that the petitioner has proved the existence of abuse by a preponderance of the evidence," the court may "grant a final domestic abuse protection order . . . to bring about

a cessation of abuse of the petitioner" and "any minor children." Miss. Code Ann. § 93-21-15(2)(a).[1] "[A] final domestic abuse protection order . . . shall be effective for such time period as the court deems appropriate." *Id.* § 93-21-15(2)(b).[2] "The expiration date . . . shall be clearly stated in the order." *Id.* "Every [final] domestic abuse protection order . . . shall set forth the reasons for its issuance, shall contain specific findings of fact regarding the existence of abuse, shall be specific in its terms and shall describe in reasonable detail the act or acts to be prohibited." *Id.* § 93-21-15(3). "No mutual protection order shall be issued unless that order is supported by an independent petition by each party requesting relief . . ., and the order contains specific findings of fact regarding the existence of abuse by each party as principal aggressor, and a finding that neither party acted in self-defense." *Id.* A final protection order shall be entered in the statewide "Mississippi Protection Order Registry" maintained by the Attorney General, and shall also be provided to the sheriff. *Id.* § 93-21-15(5). The court may modify or dissolve a protection order on a subsequent petition of either party after a hearing is held with notice to both parties and an opportunity to be heard. Miss. Code Ann. § 93-21-15(6).

---

[1] Subsection (1) of Mississippi Code Annotated section 93-21-15 authorizes a justice or municipal court to grant a temporary domestic abuse protection order after the respondent is afforded notice and an opportunity to be heard. A decision by a justice court or municipal court granting or denying a temporary order is subject to de novo review by a chancery court or county court. Miss. Code Ann. § 93-21-15(1)(c). Further discussion of temporary orders is omitted because this case does not involve a temporary order.

[2] "Temporary provisions addressing temporary custody, visitation, or support of minor children contained in a final domestic abuse protection order issued by a chancery or county court shall be effective for one hundred eighty (180) days." Miss. Code Ann. § 93-21-15(2)(c). This case does not involve any issues of child custody, visitation, or support.

4

## FACTS AND PROCEDURAL HISTORY

¶6.     On March 9, 2018, Shelby Waite filed a "Petition For Emergency Temporary Restraining Order Without Notice, and for Protection from Domestic Abuse Pursuant to [Mississippi Code Annotated section] 93-21-15, And For Other Relief" in the Madison County Chancery Court. Waite alleged that she had been cohabiting with Justin Adkisson until February 8, 2018, when she and her minor child[3] left Adkisson's house and "moved to a secret location . . . out of fear for her life and personal safety." Waite stated that she had later moved to Illinois. Waite alleged that Adkisson had engaged in repeated acts of domestic violence against her and that she was in great fear of him. Waite sought an emergency domestic abuse protection order, without notice to Adkisson, pursuant to the PDAL. She also sought "monetary compensation" for various alleged damages and attorney's fees. The petition's introductory paragraph also cited Mississippi Rule of Civil Procedure 65.

¶7.     On March 13, 2018, the chancellor granted a temporary restraining order (TRO) without notice to Adkisson. In granting the TRO, the chancellor relied on Rule 65 rather than the PDAL. The TRO prohibited Adkisson from coming within 1,500 feet of Waite or her child. The TRO set a hearing for March 27, 2018, and directed Waite to serve Adkisson with a copy of the order summoning him to the hearing. A separate order set the hearing for a maximum time of one hour. A docket entry indicated that a "special master" would preside at the hearing, although no order of reference was ever entered.

---

[3] Adkisson is not the father of the minor child.

5

¶8.     On March 16, 2018, Waite filed a "Petition for Domestic Abuse Protection Order" pursuant to the PDAL, using the standard form developed by the Attorney General. *See* Miss. Code Ann. § 93-21-11(9) (Rev. 2013).  The petition's substantive allegations were similar to those in Waite's original petition.  A Rule 81 summons was issued ordering Adkisson to appear at a hearing on the petition on March 27.  The chancellor entered an order setting the petition for a hearing at the same time and place as the hearing on Waite's original petition, again for a maximum time of one hour.  A docket entry again indicated that the special master would preside.  Adkisson was personally served with the summons and petition on March 19.

¶9.     The special master presided over a one-hour hearing that was held on March 27, 2018. On direct examination, Waite accused Adkisson of multiple serious allegations of physical abuse against her, and a printout of text messages exchanged between Waite and Adkisson in May 2017 was admitted into evidence.  Waite testified that she was living in Illinois at the time of the hearing.  On cross-examination, Adkisson's attorney questioned Waite about, inter alia, an incident in which she allegedly pointed a gun at Adkisson.  Waite admitted that she had a gun during an argument with Adkisson, but she denied that she pointed the gun at Adkisson's head.

¶10.    Adkisson did not testify but called Flora Police Chief Arty Girod as a witness.  Girod testified that on February 7, 2018, Adkisson told him that "he was trying to end [his] relationship" with Waite and that it "wasn't going well."  Adkisson asked Girod for advice on how to get Waite out of his house.  Girod was concerned by what Adkisson told him, and

6

he advised Adkisson to get a lawyer. A day or two later, Adkisson told Girod that Waite had threatened to destroy his home. Girod accompanied Adkisson to the home but found no damage. Later that day, Adkisson and Waite both came to the police station. They arrived separately, but Adkisson asked to talk to Waite privately, and Waite agreed. Girod let them talk in his office for more than an hour. Girod testified Waite was "extremely loud" and "volatile," while Adkisson was calm. Waite and Adkisson eventually left the station separately.

¶11. Waite called her mother, Janet Pennington, as a "rebuttal" witness. Pennington testified that in 2016, Adkisson called her husband (Waite's father) and said that he had "put his hands on [Waite] in anger" and "he was sorry." Pennington testified that she overheard Adkisson's admission because her husband had put him on speaker phone. Pennington testified that in 2017 and 2018 she saw significant bruises on Waite's arms and legs.

¶12. After a brief recess, the special master announced his ruling as follows:

> After hearing this matter, the Court has concerns as to both parties' actions in this matter. The Court understands that this matter was filed under both Rule 65, as well as could be filed as domestic violence. The Court is concerned about some actions that were testified to of Mr. Adkisson, but also was concerned regarding some guns that was testified to of Ms. Waite. However, this matter was filed under Rule 65, as well as a Petition for Domestic Abuse.
>
> The matter was given a Temporary Restraining Order Without Notice, which thereafter was set down for hearing today, after giving the matter priority over all other matters. So the Court is looking at this matter as a Rule 65, even though the petition was styled one way -- I don't have it right here in front of me. Anyway, I'm looking at this as a Temporary Restraining Order.
>
> The Court is going to go under Rule 65 and not that of a Domestic Abuse Statute and is going to find that Ms. Waite has met her burden of proof as to a Rule 65 Preliminary Injunction in this matter. And that the defendant shall

7

stay away from the petitioner, as requested, at least 1,500 feet at all times. Even if she moves back, that means if you see her at Kroger, you see her on Aisle 1, you leave. You are not to go around her work place. You are not to be around her children -- her child. It was my understanding it was not your child.

So the Court is going to grant a no contact request. That is e-mail, text message, smoke signals, whatever of these other new things that I don't know about as your attorney mentioned as to that. Further, any law enforcement officer in the State of Mississippi or any other jurisdiction shall be able to enforce this injunction.

Also, the Court, because this is domestic relations matter, is not going to require a bond in this matter. But I will tell you that if there is any contact and it comes back before the Court, it's not going to be good. Okay. I'm concerned. Ms. Waite, you will note that you should be granted what you've requested here in the Court, but because of the testimony, I think it would be best to go under Rule 65 instead of domestic violence at this time. But you get the exact same request that you got.

¶13.    At the conclusion of the special master's bench ruling, Adkisson's attorney asked, "[G]iven that Ms. Waite has indicated a desire to come back to Mississippi, and given some of the testimony, could [we] ask that [the] no contact order be . . . reciprocal?" In response, Waite's attorney objected that the issue was "not before the Court." The special master stated that he "would recommend" a reciprocal order, but he agreed that he could not do so because the issue was "not before the Court."

¶14.    Less than two hours after the hearing ended, a "Restraining Order" was entered that was signed by both the special master and the chancellor. The court found that Waite had "met her burden of proof pursuant to . . . Rule 65" of the Mississippi Rules of Civil Procedure, and the court granted Waite a "permanent restraining order" against Adkisson.[4]

_____

    [4] As noted above, at the conclusion of the hearing, the special master stated that he was granting a "Preliminary Injunction." Orders granting or denying preliminary injunctions

8

The order prohibited Adkisson from coming within 1,500 feet of Waite or her child or attempting any contact with Waite or her child. The court indicated that it was granting relief on Waite's original petition (filed on March 9) and that Waite's second petition (filed on March 13) was "denied and dismissed." The court did not direct the clerk to enter the order in the statewide protection order registry or provide a copy to the sheriff. The order shows that it was "[p]resented by" Waite's attorney and "[a]pproved as to [f]orm by" Adkisson's attorney.[5] Waite subsequently filed a notice of appeal.

## ANALYSIS

¶15. On appeal, Waite argues that the chancery court erred by granting her a permanent restraining order under Rule 65 rather than a final domestic abuse protection order under the PDAL. We agree with Waite that the chancery court erred by simply granting relief under Rule 65 rather than deciding whether she was entitled to relief under the PDAL. Waite also asks this Court to reverse and render a judgment granting a final domestic abuse protection order under the PDAL. That we cannot do. Rather, the chancery court, as the finder of fact,

---

are not appealable as of right. *See* 2 Jeffrey Jackson et al., *Mississippi Civil Procedure* § 28:12 (2019 ed.). However, the court's written order granting a permanent restraining order is controlling. *See Banks v. Banks*, 511 So. 2d 933, 934-35 (Miss. 1987). Furthermore, a report of a special master has no effect until the chancellor accepts it. *In the Matter of J.W.*, 220 So. 3d 202, 203 (¶5) (Miss. Ct. App. 2017).

[5] The process leading to the permanent restraining order entered by the chancery court did not comply with Rule 53 of the Mississippi Rules of Civil Procedure. There was no order of reference, no report of the special master, and no opportunity for the parties to file objections to the special master's report. *See* M.R.C.P. 53(d), (g). However, Waite apparently acquiesced in this truncated procedure, and she does not make an issue of it on appeal. Accordingly, she has waived any objection to these procedural irregularities. *See Massey v. Massey*, 475 So. 2d 802, 806 (Miss. 1985).

must decide whether Waite proved domestic abuse by a preponderance of the evidence, as required by the PDAL. Therefore, we reverse and remand the case to the chancery court for that court to conduct a new hearing, determine whether Waite met her burden under the PDAL, and then grant or deny relief accordingly.

¶16. This Court addressed a similar issue in *Pratt v. Nelson*, 170 So. 3d 620 (Miss. Ct. App. 2015). In that case, Nelson filed a petition for a domestic abuse protection order against Pratt under the PDAL, but the chancellor ultimately granted a permanent restraining order under Rule 65 rather than under the PDAL. *See id.* at 622-25 (¶¶4, 10, 14, 16-17). This Court held that the chancellor erred by doing so. We noted that Nelson had requested relief only under the PDAL and not under Rule 65. *Id.* at 624-25 (¶¶16-17). We further explained that Rule 65 is not a freestanding source of authority for the issuance of a permanent restraining order. *Id.* at 625 (¶17). We held that "Nelson was either entitled to relief under the [PDAL] or not." *Id.* In other words, the chancellor was obliged to decide whether Nelson proved domestic abuse by a preponderance of the evidence and then grant or deny relief under the PDAL. The chancellor could not sidestep that issue by granting a permanent restraining order pursuant to Rule 65 and no other authority.

¶17. *Pratt* correctly recognized that a permanent restraining order cannot be issued based solely on the authority of Rule 65, which is a rule of procedure. *Id.* Permanent injunctive relief may be granted only to protect and prevent the violation of some substantive "legal right." *See Tallahatchie Valley Elec. Power Ass'n v. Miss. Propane Gas Ass'n Inc.*, 812 So.

10

2d 912, 927 (¶50) (Miss. 2002).[6] A permanent "injunction is a 'remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed—if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise.'" *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005) (quoting *Klay v. United Healthgroup Inc.*, 376 F.3d 1092, 1098 (11th Cir. 2004)); *see also, e.g.*, *Reyes v. N. Tex. Tollway Auth.*, 861 F.3d 558, 565 n.9 (5th Cir. 2017) (stating that a claim for injunctive relief is not "freestanding" and "must be supported by some underlying cause of action").

¶18.    In this case, Waite did allege an independent legal right and cause of action under the PDAL.  Indeed, the PDAL not only provides a right and cause of action but also a complete scheme for the issuance of injunctive relief in the form of emergency, temporary, and final domestic abuse protection orders.  Therefore, resorting to Rule 65 is entirely unnecessary in the case of a petition filed under the PDAL.  As we explained in *Pratt*, a petitioner who seeks a domestic abuse protection order under the PDAL "is either entitled to relief under the [PDAL] or not." *Pratt*, 170 So. 3d at 625 (¶17).

¶19.    The problem in this case is that the chancery court did not specifically address the question whether Waite was entitled to relief under the PDAL.  The court's final order stated that Waite's petition under the PDAL, the second of the two petitions that she filed, was

---

[6] *Accord Miss. High Sch. Activities Ass'n v. Hattiesburg High Sch.*, 178 So. 3d 1208, 1213 (¶22) (Miss. 2015) ("[A]n application for injunctive relief [must] be predicated upon some [cognizable] legal or equitable claim . . . ." (emphasis omitted) (quoting *In re Bell*, 962 So. 2d 537, 541 (¶12) (Miss. 2007)); *Sec'y of State v. Gunn*, 75 So. 3d 1015, 1021 (¶17) (Miss. 2011) ("The absence of a decision on the merits precludes a chancellor from granting a permanent injunction . . . .").

"denied and dismissed." However, the basis of the court's ruling is unclear. In his bench ruling, the special master simply stated, "I think it would be best to go under Rule 65 instead of [the PDAL] at this time. But you get the exact same request that you got [sic]." The chancery court never made a finding that Waite had or had not proven domestic abuse by a preponderance of the evidence, as required by the PDAL. Miss. Code Ann. § 93-21-15(2)(a). And the special master never stated why he thought "it would be best" to proceed under Rule 65 rather than under the PDAL. Thus, the chancery court may have denied Waite's petition under the PDAL only because it concluded—erroneously—that it could grant the "exact same" relief under Rule 65.

¶20. Therefore, this case must be reversed and remanded for further proceedings on Waite's petition for a final domestic abuse protection order under the PDAL. On remand, the chancery court must decide whether Waite has proven domestic abuse by a preponderance of the evidence, as required by the PDAL. Miss. Code Ann. § 93-21-15(2)(a). If the court enters a final domestic abuse protection order, the court's order "shall set forth the reasons for its issuance, shall contain specific findings of fact regarding the existence of abuse, shall be specific in its terms and shall describe in reasonable detail the act or acts to be prohibited." *Id.* § 93-21-15(3).

¶21. **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**